Hope A. Del Carlo, OSB No. 00241
222 SW Columbia St., Suite 1600
Portland, OR 97201
hope_delcarlo@hotmail.com
Telephone: (503) 789-7372
Facsimile: (503) 253-3208

Mark E. Griffin, OSB No. 76152
Griffin & McCandlish
215 SW Washington St., Suite 202
Portland, OR 97204
mark@markgriffin.com
Telephone: (503) 224-2348
Facsimile: (503) 224-3634

Attorneys for Plaintiffs Justin James and Nicole James

FILED'08 MAR 27 16:09USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JUSTIN JAMES and NICOLE JAMES; | ) | Case No. CV'08 - 0397 - BR |
| Plaintiffs, | ) | COMPLAINT |
| v. | ) | Truth in Lending Act, Fraud, Oregon Mortgage Broker and Banker Statute |
| FREMONT INVESTMENT & LOAN COMPANY, a California corporation; BRIDGE CAPITAL CORPORATION, a California corporation, | ) | REQUEST FOR INJUNCTION |
| Defendants | ) | DEMAND FOR JURY TRIAL |

INTRODUCTION:

1.

This is a consumer fraud case arising out of two refinanced home mortgages. Justin and Nicole James ("Jameses") are a married couple who own two homes on the Oregon coast; a residence and a rental home. In September 2006, an agent of Bridge Capital Corporation ("Bridge") through fraud and deceit convinced the plaintiffs to refinance the mortgages on both properties. The refinanced loans, made by Fremont Investment & Loan ("Fremont") were on less favorable terms than the Jameses' prior mortgages. Bridge convinced the Jameses to sign the paperwork for these loans by promising that it would



#20496

refinance them at no charge into the best rate available after six months of repayment. The later refinance never materialized. Bridge charged approximately $25,000.00 in loan origination fees alone to arrange these transactions. In addition to the fraudulent verbal disclosures made to the plaintiffs in conjunction with the loans, plaintiffs also were given inaccurate Truth in Lending Act disclosures. This lawsuit demands rescission of the Jameses' residential loan under the Truth in Lending Act, money damages, and other relief, including an injunction against foreclosure of the properties.

## JURISDICTION

2.

This court has jurisdiction of the case by virtue of 15 USC § 1640(e) and 28 USC §§ 1331, 1337.

## PARTIES

3.

The plaintiffs, Justin and Nicole James ("the Jameses"), are natural persons. They own a home at 4063 43rd St. NE, Neotsu, Oregon, which is and has been at all times material to this action their principal residence, and a rental property located at 2125 NE 21st, Lincoln City, Oregon.

4.

Defendant Fremont Investment & Loan ("Fremont") is a California corporation.

5.

Defendant Bridge Capital Corporation, ("Bridge") is a California corporation that formerly was or should have been licensed as an Oregon mortgage broker or banker under ORS 59.840, *et seq.*

6.

On information and belief, at all times relevant to this action, Fremont regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, making

them creditors under the Truth in Lending Act ("TILA"), 15 USC § 1602(f) and Regulation Z, 12 CFR § 226.2(a)(17).

7.

On information and belief, at all times relevant to this action, Fremont is the current holder or assignee of the residential loan that is the subject of this action, making it liable for the loan's rescission under the Truth in Lending Act ("TILA"), 15 USC § 1635, and Regulation Z, 12 CFR § 226.23.

FACTUAL ALLEGATIONS:

8.

The plaintiffs called Bridge in response to a Bridge flyer they received in the summer of 2006. The plaintiffs were looking for a lender to refinance the loan on their rental property. By making false promises, Bridge convinced the plaintiffs to refinance both loans using Bridge's services. Fremont was the originating lender for both loans.

9.

On or about September 15, 2006, a notary public came to the plaintiffs' home with loan documents from Bridge and Fremont. Plaintiffs signed the documents but were not given the opportunity to read them with care before signing.

10.

Prior to closing, Bridge told the plaintiffs that the loans it was offering them were the best that they could qualify for at the time and that after six months of on-time payments (which would improve the Jameses' credit rating), Bridge would refinance the Jameses into new 30-year, fixed-rate loans at "the lowest rate." Bridge advised the Jameses that the new fixed rate loans would cost a total of $700.00 less per month than the loans they had prior to the 2006 refinance.

11.

After six months had passed and the Jameses had timely made payments, Bridge continued to promise the plaintiffs their new loans, and told the Jameses that Bridge had begun the process of originating the refinances. Bridge ordered an appraisal of the plaintiffs' properties in the spring of 2007 but never closed the loans. By May 2007, Bridge's employees were hanging up on the plaintiffs when the Jameses attempted to contact Bridge by phone. The promised loans never materialized.

12.

In the course of processing and underwriting the plaintiffs' loan in or about September, 2006, Bridge prepared a loan application on plaintiffs' behalf that misrepresented the plaintiffs' income without plaintiffs' knowledge or consent. On information and belief, the application was transmitted to Fremont prior to the loan's closing.

13.

On information and belief, Fremont committed to fund the plaintiffs' loan originated by Bridge prior to the loan's underwriting, approval, signing, and funding; Bridge was the conduit between plaintiffs and Fremont during the loan origination process and acted as Fremont's agent during all phases of loan application, underwriting, closing, and funding the plaintiffs' loans.

14.

On information and belief, Fremont set its own approval conditions for the plaintiffs' loan, participated in underwriting the loan, and performed an independent review of the plaintiffs' loan application and supporting documentation.

15.

On information and belief, Fremont paid Bridge a yield spread premium in connection with the plaintiffs' refinance.

FIRST CLAIM FOR RELIEF

Fraud

(against Bridge and Fremont)

16.

Plaintiffs reallege and incorporate by reference paragraphs 1 through 15.

17.

In its capacity as an agent of Fremont, Bridge made the following false representations to plaintiffs:

A. That the loans Bridge arranged for them were the best the plaintiffs could qualify for at the time;

B. That Bridge would replace the loans at no cost in six months with loans that reduced their total monthly mortgage payments by $700.00;

C. That the new loans arranged by Bridge would include escrow reserves for the payment of taxes and insurance;

D. That Bridge would verify plaintiffs' income, assets, and creditworthiness prior to approving the loan.

18.

Bridge additionally made the following false representations and omissions in connection with plaintiffs' loans and transmitted documents to Fremont that revealed the false representations:

A. Bridge falsely completed the plaintiffs' loan application by misrepresenting the Jameses' income: the application stated that Justin James earned $6750.00 per month, when he actually earned approximately half that amount each month.

B. Bridge omitted to tell the plaintiffs that, based upon the income and asset information plaintiffs had supplied, the loans Bridge and Fremont were saddling them with were unaffordable and unsuitable for plaintiffs and ultimately would lead to the plaintiffs' loss of both properties.

19.

Defendants knew or should have known that the representations alleged in paragraphs 18 and 19 were false and made those representations, or omitted to inform plaintiffs of the truth, to induce the plaintiffs to enter into the loan refinance transactions with Bridge and Fremont. Defendants knew that the plaintiffs' preexisting mortgages were more favorable to the plaintiffs than the refinance they were defrauded into making. They also knew that Bridge did not intend to refinance and would not refinance the plaintiffs into better loans after six months, regardless of the Jameses timely monthly payments.

20.

As a result of defendants' false representations, plaintiffs were damaged in the following ways:

A. Plaintiffs entered into two unnecessary refinances that caused them to incur approximately $39,652.00 in closing fees and costs.

B. Plaintiffs' monthly loan principal and interest payment on their residence increased by approximately $600.00 per month, not including taxes and insurance, when Bridge promised that their loan payment would decrease. This additional interest, calculated over the life of the loan, is an item of plaintiffs' damages, and will be calculated with more specificity at trial.

C. Plaintiffs' monthly loan principal ind interest payment on their rental property increased by approximately $600.00 per month as well, when Bridge promised that the payment would decrease. This additional interest, calculated over the life of the loan, is an item of plaintiffs' damages, and will be calculated with more specificity at trial.

D. Discovering that they had been cheated by the defendants caused the Jameses severe emotional distress in the form of anxiety about whether they would be able to make the new payments, and at the prospect of losing their properties to foreclosure. Justin James and Nicole James have each been damaged in the amount of $10,000.00, for a total of $20,000.00.

21.

Defendants' misrepresentations to plaintiffs were made with malice; alternatively, defendants have shown a reckless and outrageous indifference to a highly unreasonable risk of harm and have acted with a conscious indifference to the welfare of others, warranting an award of punitive damages to be proven at trial, at a minimum amount of $2,000,000.00.

22.

Fremont is jointly and severally liable for the fraud because Fremont acted in concert with Bridge, or pursuant to a common design with it, to defraud the plaintiffs; or gave substantial assistance to Bridge in accomplishing the fraud upon the plaintiffs, while its own conduct, separately considered, constituted a breach of duty to the plaintiffs.

SECOND CLAIM FOR RELIEF

Oregon Mortgage Broker and Banker Statute, ORS 59.840, *et seq.*

(against Bridge)

23.

Plaintiffs reallege and incorporates by reference paragraphs 1 through 22.

24.

Defendant Bridge has transacted business as a mortgage banker or mortgage broker by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, in violation of ORS 59.925(b).

25.

As a result of defendant's violations of ORS 59.925(a) and (b), plaintiffs have suffered an ascertainable loss consisting of the closing costs of approximately $39,652 and additional interest they are committed to pay under the terms of the new loans.

THIRD CLAIM FOR RELIEF

Truth in Lending Act

(against Fremont)

26.

Plaintiffs reallege and incorporate by reference paragraphs 1 through 25.

27.

Fremont's residential loan to plaintiffs is a consumer credit transaction subject to the plaintiffs' right of rescission pursuant to TILA, 15 USC § 1635, and Regulation Z, 12 CFR § 226.23.

28.

At the consummation of the refinanced loan transactions, Fremont failed to deliver to each of the plaintiffs all correct material disclosures required by TILA, in violation of 12 CFR § 226.15(b)(5).

29.

Pursuant to 15 USC §1635(a) and 12 CFR § 226.23(a)(3), the plaintiffs had a continuing right to rescind the consolidated transaction for up to three years following its consummation, which plaintiffs exercised by sending a letter to Fremont on February 26, 2008.

30.

As a result of the aforesaid violations of TILA, pursuant to 15 USC § 1635(a) and 1640(a), Fremont are liable to plaintiffs for:

A. Actual damages in an amount to be determined at trial, including but not limited to return of any money or property given by the plaintiffs to anyone in connection with this transaction, including all loan fees and costs paid in connection with the loan and all payments made by plaintiffs;

B. Statutory damages of $4,000.00.

C. Reasonable attorney fees and costs.

FOURTH CLAIM

Injunction

(against Fremont)

31.

Plaintiffs reallege and incorporate by reference paragraphs 1-30.

32.

Fremont has threatened to foreclose on the properties. Plaintiffs are informed and believe that Fremont has initiated processes to begin non-judicial foreclosure proceedings.

33.

Under the circumstances, foreclosure would be inequitable.

34.

Plaintiffs do not have a plain, speedy and adequate remedy at law to prevent foreclosure and the loss of their properties.

35.

Plaintiffs will suffer immediate and irreparable injury absent an order enjoining defendant Fremont from attempting to foreclose, threatening to foreclose, or foreclosing on the properties, until further order of the court.

36.

Plaintiffs are entitled to equitable relief, including an order preliminarily and permanently enjoining Fremont from attempting to foreclose, threatening to foreclose, or foreclosing on the properties, until further order of the court.

///

PRAYER FOR RELIEF:

WHEREFORE, plaintiffs pray for:

1. On their first claim for relief (Fraud):

    A. Actual damages in an amount to be proven at trial;

    B. Non-economic damages in the amount of $20,000.00..

    C. Punitive damages in the amount of at least $2,000,000.

2. On their second claim for relief (ORS 59.925):

    A. Actual damages in an amount to be proven at trial;

    B. Attorneys fees pursuant to ORS 59.925(8).

    C. Punitive damages of at least $2,000,000.

    D. Reasonable costs of the action.

3. On their third claim for relief (TILA):

    A. Actual damages in an amount to be proven at trial, including but not limited to plaintiffs' closing costs and all payments made on the loan, together with prejudgment interest;

    B. Statutory damages under TILA of $4000.00;

    C. Attorneys fees pursuant to 15 USC § 1640(a)(3);

    D. A court order declaring valid the plaintiffs' exercise of rescission under the Truth in Lending Act, and enjoining the defendants from foreclosing upon the property secured by the residential loan.

    E. Reasonable costs of the action.

4. On their 4th claim for relief (injunction)

    A. For an order preliminarily and permanently enjoining Fremont from attempting to foreclose, threatening to foreclose, or foreclosing on the properties, until further order of the court.

    B. For such other and further relief as this court deems appropriate.

    C. Reasonable costs of the action.

JURY DEMAND:

Plaintiffs hereby demand trial by jury.

DATED this 27th day of March, 2008.

Respectfully submitted,

By:______________________

Mark E. Griffin, OSB No. 76152
GRIFFIN AND McCANDLISH
215 SW Washington St, Suite 202
Portland, OR 97202
mark@markgriffin.com
Telephone: (503) 224-2348
Facsimile: (503) 224-3634

Hope A. Del Carlo, OSB No. 00241
Telephone: (503) 789-7372
Facsimile: (503) 253-3208
hope_delcarlo@hotmail.com

Of Attorneys for Plaintiffs